IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| EDN GLOBAL, INC. d/b/a EDN COMMUNICATION and JEROME EDMONSON,<br><br>        Plaintiffs,<br><br>v.<br><br>AT&T, INC., AT&T MOBILITY SERVICES LLC, STEVE DRISCOLL, DOUG CLARK, and CHRISTOPHER SAMBAR,<br><br>        Defendants. | CIVIL ACTION NO.<br><br>_____ |

## NOTICE OF REMOVAL

In accordance with 28 U.S.C. §§ 1332(a), 1441, and 1446, Defendants hereby remove the above-captioned action from the Superior Court of Fulton County, Georgia, to the United States District Court for the Northern District of Georgia.

## INTRODUCTION

1.     This is Plaintiffs' second action challenging the termination of EDN Global, Inc. d/b/a EDN Communication ("EDN") as an authorized seller of certain AT&T products and services, including AT&T's FirstNet products and services, in 2019.

2.    Plaintiffs previously asserted a two-count complaint against AT&T Inc. in the Superior Court of DeKalb County, Georgia, which AT&T Inc. removed to this Court based on federal diversity jurisdiction. *See EDN Global, Inc. d/b/a EDN Communication and Jerome Edmonson v. AT&T Inc.*, No. 1:21-cv-1463-JDB (N.D. Ga.) (the "First Removed Action"). After this Court transferred the First Removed Action to the Northern District of Texas based on a forum-selection clause in the parties' contract, Plaintiffs sought to add Georgia citizens AT&T Mobility Services LLC ("AT&T Mobility") and AT&T employee Steve Driscoll as additional defendants, with the apparent goal of destroying diversity jurisdiction. When AT&T opposed joinder of the non-diverse defendants, Plaintiffs voluntarily dismissed the First Removed Action.

3.    Seven months later, Plaintiffs filed this action in Georgia state court, naming AT&T Mobility and Mr. Driscoll as Defendants in another effort to avoid diversity jurisdiction. While relying on same essential factual allegations giving rise to the First Removed Action, Plaintiffs attempt to thwart federal jurisdiction by repackaging their claims, including: (a) dropping the breach of contract claim (and omitting any discussion of the written contract governing the parties' relationship) asserted in the First Removed Action; and (b) transforming a single trade secret misappropriation claim under the Georgia Uniform Trade Secrets Act

asserted in the First Removed Action into sixteen different purported state-law tort and statutory claims in this action.

4.     Defendants remove this action because (a) the only Georgia citizens named as Defendants (AT&T Mobility and Mr. Driscoll) have been fraudulently joined; and (b) the requirements of diversity jurisdiction have otherwise been satisfied.[1]

## BACKGROUND AND SUMMARY OF THE COMPLAINT

## I.     Factual Background

5.     In January 2018, Plaintiff EDN and SBC Global Services, Inc. d/b/a AT&T Global Services ("AT&T Global")[2] entered into the AT&T Alliance Program Agreement (the "Agreement"). A true and correct copy of the Agreement is attached hereto as **Exhibit A**.[3] Under the Agreement, EDN agreed to serve as a "Solution Provider" to AT&T Global, which meant EDN would promote and market certain AT&T products and services to prospective customers and submit

---

[1] By consenting to this removal, Defendants Christopher Sambar and Doug Clark do not waive their objections to any Georgia court's exercise of personal jurisdiction over them for this action.

[2] AT&T Corp. is the successor in interest to AT&T Global.

[3] The Agreement, though not attached to Plaintiffs' Complaint, forms the basis of Plaintiffs' claims and therefore is incorporated by reference. *See Day v. Taylor,* 400 F.3d 1272, 1276 (11th Cir. 2005).

orders for those services to AT&T. *See* Ex. A § 1.1. In exchange, AT&T Global would compensate EDN. *Id.* § 5.2.

6.    In July 2018, EDN and AT&T Global entered into the FirstNet Addendum to the Agreement, which allowed EDN to promote and submit orders for certain AT&T First Responder Network Authority ("FirstNet") services.

7.    Plaintiff Jerome Edmondson, EDN's "President and Founder," signed the Agreement as EDN's authorized representative. *See* Ex. A at 21. Mr. Edmondson did not sign as a contracting party.

8.    According to the Complaint,[4] Plaintiffs began marketing AT&T services to various organizations and secured several contracts with these organizations for AT&T. *See* Ex. B, Compl. ¶¶ 32–60. Plaintiffs claim their "marketing strategy" and "customer leads" were based on "their own personal relationships and business relationships," and Plaintiffs claim to have disclosed this marketing strategy to various organizations as well as "AT&T officers." *Id.* ¶¶ 40–43.

---

[4] In accordance with 28 U.S.C. § 1446(a), a true and correct copy of the Complaint and all other process, pleadings, and orders served upon Defendants in the Fulton County action is attached hereto as **Exhibit B**.

9. Plaintiffs claim that AT&T employees Steve Driscoll and Doug Clark "required Plaintiffs to put their customer leads and referral lists into Salesforce," AT&T's "customer relationship management platform," thereby providing these customer lists to Messrs. Driscoll and Clark. *Id.* ¶ 64. Plaintiffs claim they "entered their customer leads" into Salesforce, which "made [these] customer leads open and visible to Defendants and the other AT&T Solution Providers." *Id.* ¶¶ 66, 67. While entering Plaintiffs' customer leads into Salesforce made those leads susceptible to "be taken by others," Plaintiffs nevertheless "complied with Defendants Driscoll and Clark's request." *Id.*

10. Plaintiffs allege that Messrs. Driscoll and Clark thereafter directly contacted Plaintiffs' customer leads and "conspired with the other Defendants" to "appropriate Plaintiffs' business relationships." *Id.* ¶¶ 65, 68. Plaintiffs also claim Driscoll and Clark "conspired with the other Defendants to prevent EDN from being compensated" for the "opportunities stolen by Defendants." *Id.* ¶¶ 72, 73. Plaintiffs claim AT&T sent them "through a continuous loop" of personnel when Plaintiffs attempted to receive compensation. *Id.* ¶¶ 74–77.

11. Plaintiffs also claim AT&T Global did not provide EDN, which Plaintiffs characterize as "the only African American FirstNet authorized dealer" at the time, "the same tools as the non-minority AT&T Solutions Providers" and

non-minority FirstNet dealers. *Id.* ¶¶ 32, 83. Among other things, AT&T allegedly (a) did not provide EDN with full access to "demonstration kits"; (b) changed the "sales tools and rules of engagement"; and (c) interfered with "sales contracts and deals." *Id.* ¶¶ 83–86.

12.    Plaintiffs also include allegations regarding two purported conversations in which (a) Mr. Clark allegedly put the names of AT&T's white and Black officers into different columns and told Mr. Edmonson "the side with the all-white AT&T officers was going to win"; and (b) Messrs. Driscoll and Clark allegedly described going to a conference of NOBLE (an "African American police organization") as being "like two headlights in a black hole." *Id.* ¶¶ 18, 91, 93.

13.    The Complaint alleges that AT&T terminated the Agreement and Addendum for convenience in 2019, after which Defendants "hire[d] some of Plaintiff's [sic] consultants directly to work for AT&T." *Id.* ¶ 100.

## II.    The First Removed Action

14.    In March 2021, Plaintiffs filed the initial complaint in the First Removed Action (a true and correct copy of which is attached hereto as **Exhibit C**) in the Superior Court of DeKalb County, Georgia. In the initial complaint, Plaintiffs asserted two claims against AT&T Inc.: breach of contract for failure to compensate Plaintiffs fully under the Agreement and Addendum; and

misappropriation of trade secrets for allegedly stealing Plaintiffs' customer leads. Ex. D at 1, 18. Plaintiffs sought $25,000,000.00 for "unpaid compensation" and $300,000,000.00 for "economic harm suffered due to violation of the Georgia Trade Secret Act." *Id.* at 23.

15.     AT&T Inc. timely removed the First Removed Action to this Court on the basis of diversity jurisdiction and informed Plaintiffs that AT&T Corp. was the proper defendant. A true and correct copy of AT&T Inc.'s prior notice of removal (without exhibits) is attached hereto as **Exhibit D**. AT&T Inc. moved to transfer based on the forum-selection clause in the Agreement, which applied to both the breach of contract and theft of trade secrets claims. *See* Ex. A § 17.2. Plaintiffs objected to the removal, but this Court denied Plaintiffs' motion to remand and transferred the action to the Northern District of Texas. A true and correct copy of this Court's June 29, 2021 Order denying Plaintiffs' motion to remand and granting AT&T Inc.'s motion to transfer is attached hereto as **Exhibit E**.

16.     On July 7, 2021, the Northern District of Texas ordered Plaintiffs to file an amended complaint that complied with the Federal Rules of Civil Procedure within 30 days. A true and correct copy of the docket in the Northern District of Texas is attached hereto as **Exhibit F**. After the Texas district court entered a show-cause order for Plaintiffs' failure to do so, Plaintiffs filed an amended complaint,

asserting the same two causes of action but also naming AT&T Global, AT&T Mobility, Mr. Driscoll, and Mr. Clark as defendants. A true and correct copy of Plaintiffs' amended complaint in the First Removed Action is attached hereto as **Exhibit G**.

17.     AT&T Inc. moved to deny Plaintiffs' attempted joinder of AT&T Mobility and Mr. Driscoll as defendants in the First Removed Action as "a last-ditch effort to destroy diversity jurisdiction through meritless claims against improper defendants." A true and correct copy of AT&T Inc.'s motion to deny joinder in the Texas action is attached hereto as **Exhibit H**. After seeking and obtaining an extension of time to respond to AT&T Inc.'s motion, Plaintiffs voluntarily dismissed the First Removed Action on the deadline for filing their response to AT&T Inc.'s motion (November 22, 2021). *See* Ex. F, at 5, 6.

**III.    Plaintiffs re-format their claims to omit any references to the Agreement and Addendum, to include AT&T Mobility and Mr. Driscoll as Defendants, and to assert a laundry list of state law claims (while dropping the breach of contract asserted in the First Removed Action).**

18.     On June 16, 2022, Plaintiffs filed this action in the Superior Court of Fulton County, Georgia. *See* Ex. C, Compl., at 1.

19.     Plaintiffs' current Complaint asserts the same factual allegations as the complaints in the First Removed Action but omits almost all references to the contract upon which the First Removed Action was predicated. *See, e.g.*, Ex. C ¶¶

61, 62, 70 (alleging specific provisions of the Agreement allegedly breached by Defendants that are omitted from the current Complaint); *compare, e.g., id.* ¶¶ 65, 71 (alleging Defendants breached the Agreement) *with* Ex. B, Compl. ¶¶ 74, 84 (making the same factual allegations but omitting entirely claims of alleged breach of contract). In essence, Plaintiffs attempt to assert claims predicated on the same set of facts, but thwart federal court jurisdiction and this Court's prior ruling that their claims are subject to the binding forum-selection clause in the Agreement. Notwithstanding their knowledge that AT&T Corp. is the proper defendant, Plaintiffs named AT&T Inc., AT&T Mobility, Mr. Driscoll, Mr. Clark, and Mr. Sambar as defendants. *See id.*

20. The current Complaint alleges sixteen counts: (1) tortious interference with contract; (2) tortious interference with business relations; (3) fraud; (4) theft of trade secrets; (5) theft by deception; (6) theft by taking; (7) conversion; (8) violation of the Georgia RICO Act; (9) breach of fiduciary duty; (10) breach of confidential relationship; (11) aiding and abetting breach of fiduciary duty; (12) civil conspiracy; (13) trespass; (14) intentional infliction of emotional distress; (15) unfair competition; and (16) "surprise." *Id.* at 22–33.

21. On June 27, 2022, AT&T Mobility was served with a copy of the Summons and Complaint. A true and correct copy of the proof of service is

attached hereto as **Exhibit I**. AT&T Inc., Mr. Clark, and Mr. Driscoll were served thereafter, and Mr. Sambar entered a waiver of service pursuant to O.C.G.A. § 9-11-4(d). *See* Ex. B, Def. Sambar's Notice of Filing Waiver of Service. The parties thereafter agreed all Defendants could answer or otherwise respond to the Complaint in this action on or before September 6, 2022. *See id.*, Stipulation Extending Time to Respond to Compl.

22.     Defendants have not filed an answer or other response to the Complaint and are not aware of any currently pending motions in that court.

**VENUE**

23.     This Court is the proper venue for removal under 28 U.S.C. § 1441(a) because Plaintiff filed the removed action in the Superior Court of Fulton County, Georgia, a court within the Northern District of Georgia. *See* 28 U.S.C. § 90(a)(2). Defendants reserve the right to transfer venue in accordance with 28 U.S.C. § 1404 and the Agreement's forum-selection clause.

**GROUNDS FOR REMOVAL: DIVERSITY JURISDICTION**

24.     Plaintiff EDN is a corporation formed under the laws of Georgia with its principal place of business in Georgia. Ex. B, Compl. ¶ 25. EDN therefore is a citizen of the State of Georgia. 28 U.S.C. § 1332(c)(1).

25.     Plaintiff Edmonson is a Georgia citizen. Ex. B, Compl., ¶ 26.

26. Defendant AT&T Inc. is a corporation formed under the laws of Delaware with its principal place of business in Texas. *Id.* ¶ 27. AT&T Inc. therefore is a citizen of Delaware and Texas. 28 U.S.C. § 1332(c)(1).

27. Defendants Clark and Sambar are Texas citizens. Ex. B, Compl., ¶¶ 30, 31.

28. Although Defendants AT&T Mobility[5] and Steve Driscoll[6] are Georgia citizens, Plaintiffs have fraudulently joined AT&T Mobility and Mr. Driscoll, and the Court therefore should ignore their citizenship for purposes of diversity jurisdiction.

29. A removing party can prove fraudulent joinder by showing either: "(1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) (citing *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th

---

[5] AT&T Mobility, which is a limited liability company, takes on the citizenship of its members for diversity purposes. *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004). Because AT&T Mobility's sole member is Cricket Holdco Inc., a corporation incorporated in Delaware with a principal place of business in Georgia, AT&T Mobility is a citizen of Delaware and Georgia.

[6] *See* Ex. B, Compl., ¶ 29.

Cir. 1989)). Here, Defendants remove this action because Plaintiffs have no possible claim against the two resident Defendants.

## I.    Plaintiffs have no possible claim against AT&T Mobility.

30.    Plaintiffs claim EDN entered a "joint venture" with AT&T Mobility and AT&T Global (Ex. B, Compl., ¶¶ 12, 17), and Plaintiffs predicate all of their claims against AT&T Mobility on the existence of this alleged joint venture.

31.    In Georgia, "where there exists an express agreement covering the same subject matter, the courts will not imply a contract." *Clary v. Allstate Fire & Cas. Ins. Co.*, 340 Ga. App. 351, 357, 795 S.E.2d 757, 763 (2017) (citing *Ga. Real Estate Properties, Inc. v. Lindwall*, 303 Ga. App. 12, 15, 692 S.E.2d 690, 693 (2010)). "It is only when the parties themselves do not expressly agree, that the law interposes and raises a promise." *Davidson v. Maraj*, 609 F. App'x 994, 999 (11th Cir. 2015) (quoting *Gilbert v. Edmondson*, 193 Ga. App. 593, 594, 388 S.E.2d 713, 714 (1989)).

32.    The written Agreement between EDN and AT&T Global expressly governing EDN's status as an authorized seller of certain AT&T products and services, including AT&T's FirstNet products and services, as well as the parties' rights and obligations relative to the parties' Confidential Information, precludes EDN from implying a joint venture between it and AT&T Global's Affiliate, AT&T Mobility, with respect to the same subject matter. *See, e.g., Lane Supply, Inc. v. W.H.*

*Ferguson & Sons, Inc.*, 286 Ga. App. 512, 649 S.E.2d 614 (2007) (where plaintiff expressly contracted with one entity to provide material for a project, it could not recover payment from entity's project subcontractors under implied contract theory).

33.    Moreover, even putting aside the existence of an express contract that precludes a separate oral or implied joint venture, Plaintiffs have failed to establish a joint venture between EDN and AT&T Mobility.

34.    First, Plaintiffs do not allege "an equal right, express or implied, to direct and control the conduct of one another in the activity causing the injury" which is necessary to create a joint venture. *Williams v. Chick-fil-A, Inc.*, 274 Ga. App. 169, 170, 617 S.E.2d 153, 155 (2005). Plaintiffs do not allege that EDN had the ability to direct and control the conduct of AT&T Mobility. *See generally* Ex. C, Compl. Plaintiffs thus fail to allege a joint venture.

35.    Second, the Agreement expressly defines the parties' relationship and precludes an implied joint venture. Among other things, the Agreement provides that EDN constitutes an "independent contractor" and states:

> [EDN] is not authorized to accept Orders or enter into written
> or verbal agreements on behalf of AT&T or any AT&T Affiliate,
> to execute a contract or transact business in the name of AT&T
> or an AT&T Affiliate, nor to create any obligation binding

> AT&T or any AT&T Affiliate unless [EDN] has received
> AT&T's prior written authorization . . . .

Ex. A §§ 4.1.1, 4.3. Thus, EDN expressly did not have an equal right to direct and control the conduct of AT&T Mobility, precluding recognition of a joint venture between EDN and AT&T Mobility. *See also id.* § 17.9 (entire agreement clause providing: "There are no understandings or representations, express or implied, not expressly set forth in this Agreement").

36.     Because Plaintiffs predicate all of their claims against AT&T Mobility on an alleged joint venture that is foreclosed by the Agreement between Plaintiffs and AT&T Global, Plaintiffs have no possible claim against AT&T Mobility,[7] and AT&T Mobility's citizenship should be disregarded for purposes of establishing diversity jurisdiction.

## II.     Plaintiffs have no possible claim against Mr. Driscoll.

37.     The Complaint includes only a handful of factual allegations regarding Mr. Driscoll: (a) EDN presented its "marketing strategy" to Messrs. Driscoll and Clark; (b) EDN introduced Messrs. Driscoll, Sambar, and Clark to leadership of NOBLE and other organizations; (c) Messrs. Driscoll and Clark

---

[7] To the extent the Court construes Plaintiffs' Complaint as asserting claims against AT&T Mobility based on the express contractual rights and obligations within the Agreement, those claims fail for the same reasons they fail against Mr. Driscoll. *See infra* section II.

required Plaintiffs to put their customer leads into the Salesforce system but did not require non-minority Solution Providers to do so; (d) Messrs. Driscoll and Clark instructed Plaintiffs to speak to other AT&T employees to submit compensation disputes; (e) Messrs. Driscoll and Clark gave the compensation for one of EDN's deals to a non-minority Solution Provider; (f) Messrs. Driscoll and Clark attended a NOBLE conference "to take all of EDN's relationships"; and (g) Messrs. Driscoll and Clark said to Plaintiffs "that going to the NOBLE conference was like two headlights in a black hole." Ex. B, Compl. ¶¶ 34, 39, 61–80, 90, 93. All of these factual allegations involve alleged actions of Mr. Driscoll in connection with AT&T Global's performance of its express contract with EDN.

38.    Only two of Plaintiffs' claims specifically reference Mr. Driscoll: Count 11 (aiding and abetting AT&T Mobility's breach of fiduciary duty); and Count 12 ("Civil Conspiracy/Business Conspiracy"), which alleges Mr. Driscoll acted for his "own personal purposes" and thus became an "independent" actor capable of conspiring with the other Defendants. *Id.* ¶ 180.

39.    As explained above, Plaintiffs cannot press an implied joint venture claim against AT&T Mobility because of the express contract between EDN and AT&T Global governing the same subject matter. Thus, derivative breach of fiduciary duty claims against AT&T Mobility, as well as Mr. Driscoll's alleged

aiding and abetting breaches of fiduciary duty by AT&T Mobility, also fail as a matter of law.

40. Regarding Plaintiffs' "conspiracy" claim against Mr. Driscoll, Plaintiffs nowhere specify how or when Mr. Driscoll acted for his "personal purposes" rather as an AT&T employee. *See generally* Ex. B, Compl. Instead, all of the allegations regarding Mr. Driscoll relate to actions allegedly taken for the benefit of AT&T Global as part of the business agreement. For this reason alone, Plaintiffs' conclusory "conspiracy" claim against Mr. Driscoll should be rejected.

41. Even assuming Plaintiffs had alleged any basis for proceeding against Mr. Driscoll individually, all of Plaintiffs' claims against Mr. Driscoll fail as a matter of law. First, because all of Plaintiffs' tort claims arise from Plaintiffs' contractual relationship with AT&T Global and Plaintiffs' alleged trade secrets, the economic loss rule and trade secret preemption preclude Plaintiffs from seeking to recover through tort claims. Second, Plaintiffs fail to state an actionable intentional infliction of emotional distress claim (the only tort claim seeking non-economic losses) against Mr. Driscoll. Third, Plaintiffs' own allegations show that they failed to make reasonable efforts to maintain secrecy of their alleged trade secrets.

A.    **The economic loss rule and Plaintiffs' trade secret claim bar Plaintiffs' alleged tort claims.**

42.    "The 'economic loss rule' generally provides that a contracting party who suffers purely economic losses must seek his remedy in contract and not in tort." *General Elec. Co. v. Lowe's Home Centers, Inc.*, 279 Ga. 77, 78 608 S.E.2d 636, 637 (2005).

43.    EDN contracted with AT&T to become a FirstNet dealer and Plaintiffs thereafter interacted with Mr. Driscoll in his capacity as an AT&T employee and pursuant to the contract with AT&T Global. All of the conduct alleged in the complaint arose from the relationships governed by the contract.

44.    Plaintiffs' attempt to convert its original two-count contract-based complaint into a sixteen-count shotgun pleading of tort claims (in which Plaintiffs conspicuously fail to ever mention the express contract that governed EDN's status as a FirstNet dealer) presents the exact maneuvering the economic loss rule serves to preclude. The economic loss rule bars all of Plaintiffs' claims against Mr. Driscoll seeking economic losses under tort theories. *See, e.g., Odelia v. Alderwoods (Ga.), LLC*, 823 F. App'x 742, 748–49 (11th Cir. 2020) (economic loss rule barred plaintiff's tort claim where claim arose from contract to purchase property) (applying Georgia law); *Silverpop Sys., Inc. v. Leading Mkt. Techs., Inc.*, 641 F. App'x 849, 853 (11th Cir. 2016) (economic loss rule barred plaintiff's tort claim "because

the duty at issue [wa]s one arising under the contract itself") (applying Georgia law); *D.J. Powers Co., Inc. v. Peachtree Playthings, Inc.*, 348 Ga. App. 248, 255, 820 S.E.2d 217, 222 (2018) (economic loss rule barred plaintiff's negligence claim based on alleged breach of contract).

45.    Moreover, because Plaintiffs assert a trade secret claim, they cannot press purported tort claims based on the same set of facts. "[T]he GTSA [Georgia Trade Secret Act] preempts claims where the plaintiff's tort claims rely on the same allegations as those underlying the plaintiff's claim for misappropriation of a trade secret." *ProNvest, Inc. v. Levy*, 307 Ga. App. 450, 451, 705 S.E.2d 204, 206 (2010); *see* O.C.G.A. § 10-1-767(a) (the GTSA "shall supersede conflicting tort, restitutionary, and other laws of this state providing civil remedies for misappropriation of a trade secret"); *see also ScaleFactor, Inc. v. Process Pro Consulting, LLC*, 394 F. Supp. 3d 680, 683 (W.D. Tex. 2019) ("[The Texas Uniform Trade Secret Act]'s preemption provision provides that the statute 'displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret.'" (quoting Tex. Civ. Prac. & Rem. Code § 134A.007(a))).

46.    Plaintiffs' trade secret claim relies on Defendants' allegedly improper acquisition of Plaintiffs' customer lists, so the GTSA preempts all of Plaintiffs' tort claims based on Defendants' alleged theft of Plaintiffs' customer lists. *See, e.g.*,

*Penalty Kick Mgmt. Ltd. v. Coca Cola Co.*, 318 F.3d 1284, 1298 (11th Cir. 2003) (GTSA claim preempted plaintiff's claims for conversion, breach of confidential relationship and duty of good faith, unjust enrichment, and quantum meruit because the claims were "clearly 'based' upon a trade secret"); *see also StoneCoat of Texas, LLC v. ProCal Stone Design, LLC*, 426 F. Supp. 3d 311, 339 (E.D. Tex. 2019) (Texas Trade Secret Act preempted plaintiffs' claims for conversion, unfair competition, and tortious interference because the claims were "based on the alleged taking of Plaintiffs' purported trade secret").

47.    Thus, both the economic loss rule and trade secret preemption bar Plaintiffs' tort claims against Mr. Driscoll.

### B.    Plaintiffs' intentional infliction of emotional distress claim fails for multiple reasons.

48.    In one paragraph, Plaintiffs assert an intentional infliction of emotional distress ("IIED") claim that arguably seeks non-economic losses:

> The proximate result of Defendants' intentional and reckless conduct, which was of an extreme and outrageous nature, as hereinabove alleged, Plaintiff Edmondson, suffered severe humiliation, mental anguish, and emotional and physical distress, and has been injured in mind and body. Defendants' conduct was so extreme in degree, as to go beyond all possible bounds of decency, and utterly intolerable in a civilized community.

Ex. B, Compl., ¶ 194. This claim fails as a matter of law.

49.     As a threshold matter, Mr. Edmonson had to bring any IIED claim within two years. *See* O.C.G.A. § 9-3-33 (two-year statute of limitations for personal injuries). All of the alleged events giving rise to this action occurred between 2018 and 2019, but Plaintiffs brought this action in June 2022. *See, e.g.*, Ex. B, Compl. ¶ 99 (alleging AT&T terminated EDN's FirstNet Addendum in May 2019 and terminated EDN's Agreement in December 2019). Thus, the statute of limitations bars the IIED claim.

50.     Moreover, to state a claim for intentional infliction of emotional distress, a plaintiff must plead four elements: "(1) intentional or reckless conduct; (2) that is extreme and outrageous; (3) a causal connection between the wrongful conduct and the emotional distress; and (4) severe emotional distress." *O'Neill v. Khuzami*, No. 1:20-CV-04632-JPB, 2022 WL 704696, at *3 (N.D. Ga. Mar. 9, 2022) (quoting *Renton v. Watson*, 319 Ga. App. 896, 903, 739 S.E.2d 19, 26 (2013)).

51.     Among other things, Plaintiffs fail to allege conduct that is extreme and outrageous. Even assuming Plaintiffs adequately have alleged purportedly racist comments by Mr. Driscoll (which Defendants vigorously deny), Georgia law is clear that this type of conduct does not support recovery for IIED. *See, e.g.*, *Ghodrati v. Stearnes*, 314 Ga. App. 321, 323–24, 723 S.E.2d 721, 723–24 (2012) (allegedly racist and derogatory comments did not suffice for IIED claim); *Cook v.*

*Covington Credit of Ga., Inc.*, 290 Ga. App. 825, 828, 660 S.E.2d 855, 858 (2008) (alleged use of racial epithet to insult plaintiff did not suffice for IIED claim).

52.    Therefore, Plaintiffs' only claim against Mr. Driscoll that arguably seeks non-economic losses fails as well.

### C.    Plaintiffs failed to make reasonable efforts to maintain secrecy of their alleged trade secrets.

53.    As AT&T Inc. explained in its motion to dismiss and its motion to deny joinder in the First Removed Action, Plaintiffs cannot possibly assert a trade secret claim predicated on information provided to AT&T within the context of the parties' express contractual relationship. *See* Ex. H, at 17–19.

54.    Trade secrets must be "subject of efforts that are reasonable under the circumstances to maintain its secrecy." O.C.G.A. § 10-1-761(4); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 134A.002(6) (defining trade secret to require that "the owner of the trade secret has taken reasonable measures under the circumstances to keep the information secret").

55.    Here, the Agreement specifically defined Confidential Information, instructed the parties how to disclose information to keep it confidential, and precluded oral modification. *See* Ex. A § 11.2.1 (defining "Confidential Information" as information marked or identified as "confidential, proprietary or private when disclosed"); § 11.2.6 (excluding from protection any allegedly

confidential information that "becomes available to the public"); § 17.8 (allowing amendment or modification "only through a subsequent written document" signed by both parties); § 17.9 (prohibiting prior written or oral representations from being considered as part of the contract).

56.     Plaintiffs do not allege they marked or identified their customer lists as "confidential, proprietary or private" when they uploaded the lists to Salesforce. In fact, Plaintiffs do not allege any facts suggesting that they kept their customer lists confidential, proprietary, or private, and indeed, the customers they identify appear to be entirely public-sector entities.

57.     Plaintiffs, moreover, expressly allege that they voluntarily placed their customer leads and referral lists into Salesforce, which they knew "made Plaintiffs' customer leads open and visible to Defendants and the other AT&T Solution Providers." Ex. B, Compl. ¶¶ 64, 66, 67. Even though Plaintiffs knew "Plaintiff's [sic] customer leads could be taken by others" if placed in the Salesforce system, Plaintiffs did so. *Id.* Plaintiffs' own allegations admitting they uploaded the information to Salesforce shows as a matter of law they did not engage in reasonable efforts to maintain the secrecy of that information.

58.     Without having made reasonable efforts to keep their customer lists confidential, Plaintiffs cannot assert claims based on Defendants' alleged theft of these "trade secrets."

59.     Because Plaintiffs have no possible claim against Mr. Driscoll, his citizenship should be disregarded for purposes of establishing diversity jurisdiction.

**III.    The remaining requirements for diversity jurisdiction are satisfied.**

60.     Because Plaintiffs are Georgia citizens and the non-fraudulently-joined Defendants are not Georgia citizens, complete diversity is satisfied. 28 U.S.C. § 1332(a).

61.     Where there is complete diversity among the parties, this Court has original jurisdiction as long as the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a).

62.     Plaintiffs seek at least $100 million in damages, which exceeds the $75,000 amount in controversy requirement. Ex. B, Compl., ¶ 109.

63.     Removal of this action is proper under 28 U.S.C. § 1441 because the requirements for general diversity jurisdiction under § 1332(a) are satisfied.

## COMPLIANCE WITH PREREQUISITES FOR REMOVAL

64.     This Notice of Removal is timely because it was filed within 30 days of service. 28 U.S.C. § 1446(b); *supra* ¶ 21.

65.     All Defendants join in this Notice of Removal, without prejudice to (1) Defendants' position that AT&T Mobility and Mr. Driscoll have been fraudulently joined; (2) Mr. Sambar's and Mr. Clark's objections to any Georgia court's exercise of personal jurisdiction over them for this action; (3) AT&T Inc.'s position that it has been improperly named as a party; and (4) Defendants' ability to move to transfer this action to a Texas court in accordance with the forum-selection clause in the Agreement.

66.     In accordance with 28 U.S.C. § 1446(d), promptly upon filing of this Notice of Removal, copies hereof will be sent to Plaintiffs and filed with the Clerk of the Superior Court of Fulton County.

67.     Defendants reserve the right to amend or supplement this Notice of Removal and reserve all rights and defenses, including those available under Federal Rule of Civil Procedure 12.[8]

---

[8] For the sole and limited purpose of establishing the basis of this Court's jurisdiction over this action, Defendants assume as true Plaintiffs' allegations in the Complaint, but Defendants deny any liability. In alleging the amount in controversy and other matters in this removal proceeding, Defendants do not concede any liability, damages, or any other claims or defenses. *See Pretka v. Kolter*

WHEREFORE, Defendants remove this action from the Superior Court of Fulton County, Georgia, to the United States District Court for the Northern District of Georgia.

Respectfully submitted this 27th day of July, 2022.


KILPATRICK TOWNSEND
   & STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309
(404) 815-6500
(404) 815-6555 (facsimile)
bsingleton@kilpatricktownsend.com
jjett@kilpatricktownsend.com
jcotton@kilpatricktownsend.com

/s/ John P. Jett
Burleigh L. Singleton
Georgia Bar No. 649084
John P. Jett
Georgia Bar No. 827033

*Counsel for Defendants*

---

*City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010) ("[T]he plaintiffs' likelihood of success on the merits is largely irrelevant to the court's jurisdiction because the pertinent question is what is in controversy in the case, not how much the plaintiffs are ultimately likely to recover." (citation omitted)).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 27, 2022, I filed a copy of the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send notice of the filing to all parties of record, and by depositing a copy thereof by U.S. Mail delivery, postage prepaid, to the following address:

Theresa Seals Starkes, Esq.
The Seals Starkes Law Firm LLC
3939 Lavista Road, Suite E 411
Tucker, GA 30084
tseals@sealsstarkeslaw.com

Reginald A. Greene, Esq.
Greene Legal Group LLC
One Georgia Center, Suite 605
600 West Peachtree Street, N.W.
Atlanta, GA 30308
rgreene@greenelegalgroup.com

Dated: July 27, 2022

KILPATRICK TOWNSEND
    & STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309
(404) 815-6500
(404) 815-6555 (facsimile)
bsingleton@kilpatricktownsend.com
jjett@kilpatricktownsend.com
jcotton@kilpatricktownsend.com

/s/ John P. Jett
Burleigh L. Singleton
Georgia Bar No. 649084
John P. Jett
Georgia Bar No. 827033

*Counsel for Defendants*