IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EDN GLOBAL, INC., et al., § | | |
| Plaintiffs, § | | |
| § | | |
| v. § | No. 3:23-CV-355-X | |
| § | | |
| AT&T MOBILITY SERVICES, § | | |
| LLC, et al., § | | |
| Defendants. § | | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs' Motion to Compel filed on January 23, 2026 (Dkt. No. 165), which was filed with a supporting appendix (Dkt. No. 166-1 ("P. App.").) United States District Judge Brantley Starr referred the motion to the undersigned for a hearing, if necessary, and determination. (Dkt. No. 167.) In compliance with an order for expedited briefing,[1] Defendants filed a response (Dkt. No. 174 ("Resp.")) and supporting appendix (Dkt. No. 175 ("D. App.")) on January 30. The Court held a hearing on the motion on February 10. (Dkt. No. 183.)

For the reasons that follow, the Court denies the motion.

### I. BACKGROUND

FirstNet is a nationwide telecommunications network intended for use by emergency responders and public safety agencies. FirstNet is funded by the First

---

[1] Plaintiffs' request for expedited consideration and resolution of the motion was undermined by Plaintiffs' failure to submit a brief in compliance with court rules, which took time to remedy. (*See* Dkt. No. 177; *see also* Dkt. No. 181 ("Mot.").)

Responder Network Authority, an agency within the Department of Commerce, and the network has been built under a public-private partnership between the Authority and AT&T.

Plaintiffs EDN Global, Inc. and its principal, Jerome Edmondson, entered into agreements with AT&T entities ("Defendants") to market and sell services and devices to first responders for use on the FirstNet system. According to Plaintiffs, they had confidential, proprietary, and trade secret information about potential FirstNet customers, and their compensation under the agreement with AT&T included a volume activation bonus and FirstNet gross add incentives. Plaintiffs allege that, once Defendants obtained Plaintiffs' protected information and realized how successful Plaintiffs would be in selling services and devices and the resulting amounts that would be owed to Plaintiffs under the agreements, Defendants terminated their agreements for convenience in July 2019 but continued to use Plaintiffs' proprietary information to secure FirstNet customers. Plaintiffs' claims relate to misappropriation of trade secrets, unfair competition, fraud, and tortious interference.

Plaintiffs' instant motion originally sought four facets of discovery. First, Plaintiffs deposed Melissa Ayala as the corporate representative of AT&T Enterprises, LLC on December 16, 2025. Plaintiffs assert that Ayala was not adequately prepared and reasonably knowledgeable concerning the topics of examination noticed, and they ask the Court to order Defendants to produce another

corporate representative for a deposition at Defendants' cost.  Second, Plaintiffs request that the Court order Defendants to provide updated discovery concerning FirstNet subscribers that Plaintiffs might contend were signed up using Plaintiffs' efforts or information.  Third, Plaintiffs seek an order compelling Defendants to produce invoices and "underlying data" for sales of devices and services to FirstNet customers.  Fourth, Plaintiffs seek an order requiring Defendants to disclose portions of the contract between the FirstNet Authority and AT&T.  The parties stated at the hearing that they have reached an agreement with respect to Plaintiff's second and third requests.  The Court, therefore, addresses the two remaining disputes.

## II.  LEGAL STANDARDS AND ANALYSIS

**A.    Plaintiffs have not shown that Ayala was not reasonably prepared and knowledgeable on the topics noticed.**

Plaintiffs noticed the deposition of Defendant AT&T Enterprises, LLC pursuant to Fed. R. Civ. P. 30(b)(6) on October 22, 2025.  (P. App. 121-22.)  It identified five topics for examination:

1. The FirstNet customer benchmarks and payments to AT&T for achieving said benchmarks from the FirstNet Authority based on the terms in the FirstNet Contract from January 1, 2017 through today.

2. AT&T's profits from meeting the FirstNet customer benchmarks and, or devices set forth in the FirstNet contract between AT&T and the FirstNet Authority from January 1, 2017 through today.

3. AT&T's profits from FirstNet customer sales to entities, agencies, municipalities, persons, or groups EDN disclosed to AT&T as potential FirstNet customers, subscribers, or leads from January 1, 2015 through January 1, 2021.

    4.      The amount of money in U.S. dollars AT&T owed EDN at the time the FirstNet Addendum was terminated.

    5.      The amount of money in U.S. dollars AT&T owed EDN at the time the Alliance Agreement was terminated.

(P. App. 127.) An amended deposition notice sent on December 3 setting the deposition for December 16 contained the same topics. (P. App. 136, 142.) Four days before the deposition—on December 12—Defendants served written objections to the deposition notice and identified the areas of examination for which it would produce a witness. (Dkt. No. 159 at App. 31-35.)

    AT&T Enterprises presented Melissa Ayala as the corporate representative, and Plaintiffs deposed her on December 16. (*See* D. App. 6.) According to Plaintiffs, Ayala was consistently unable—or refused—"to provide substantive answers to the noticed Rule 30(b)(6) topics." (Mot. at 7.) They have directed the Court to multiple points in the deposition transcript in which Ayala indicated an inability to fully answer the question asked, and they find particular fault with Ayala's inability to answer questions about a spreadsheet Defendants produced the day before the deposition. They also charge Ayala as deficient because "she did not know whether (1) there were instances AT&T used information it obtained from EDN without its permission; (2) there were instances where AT&T used EDN's information and was unauthorized to do so; and (3) AT&T ever used any of EDN's information." (Mot. at 8 (footnotes omitted).) Plaintiffs therefore contend that Defendants failed to

present a corporate representative who was adequately prepared and knowledgeable on the topics noticed for examination.

A corporation or other legal entity, of course, is incapable of sitting for a deposition.  Rule 30(b)(6) is the procedural mechanism through which a litigant may depose an entity or organization.  Once noticed for a deposition under the rule, the corporation must "designate one or more officers, directors, or other persons to testify on its behalf about information known or reasonably available to it." *Robinson v. Nexion Health At Terrell, Inc.*, 312 F.R.D. 438, 441 (N.D. Tex. 2014).  "The rule streamlines the discovery process and places the burden of identifying responsive witnesses for a corporation on the corporation, which appears vicariously through its designee." *Id.* (citing *Resol. Tr. Corp. v. S. Union Co.*, 985 F.2d 196, 197 (5th Cir. 1993)).  Once designated, the entity cannot rest on the designee's personal knowledge but has a duty to "prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources." *Id.* (quoting *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006)).  The deponent entity "must prepare the designated witness to 'answer fully, completely, unevasively, the questions posed . . . as to the relevant subject matters." *Id.* (quoting *Brazos River Authority*, 469 F.3d at 435).  "If the designated deponent is not knowledgeable about relevant facts, and the corporation has failed to designate an available, knowledgeable witness then the appearance is essentially no appearance at all, and sanctions may be imposed." *Id.*

The duties imposed by Rule 30(b)(6) do not rest exclusively on the corporate deponent. The "party seeking to depose an organization 'must describe with reasonable particularity the matters for examination.'" *Pauls v. The Prudential Ins. Co. of Am.*, No. 3:16-CV-2116-M-BN, 2016 WL 6397564, at *4 (N.D. Tex. Oct. 28, 2016) (quoting Fed. R. Civ. P. 30(b)(6)); *see also Chauvin v. United Parcel Serv., Inc.*, No. CV 23-392, 2023 WL 4175100, at *7 (E.D. La. June 26, 2023). "For Rule 30(b)(6) to effectively function, the requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute." *Pauls*, 2016 WL 6397564, at *4 (quoting *Hartford Fire Ins. Co. v. P & H Cattle Co.*, No. CIV.A. 05-2001-DJW, 2009 WL 2951120, at *10 (D. Kan. Sept. 10, 2009)). Failing to provide the necessary specificity can leave a topic overly broad and can foist onto the deponent the impossible task of adequately preparing a witness to testify. *See id.*

There is at least one additional responsibility imposed by Rule 30(b)(6) that is relevant here. Since 2020, the rule has required "the serving party and the organization [to] confer in good faith about the matters for examination" "[b]efore or promptly after the notice . . . is served[.]" Fed. R. Civ. P. 30(b)(6). The Court's task of assessing Defendants' compliance with the deposition notice in this case has been made more difficult by the parties' failure comply with this requirement. Plaintiffs candidly admitted at the hearing that there was no pre-deposition conference on the examination topics. For their part, Defendants acknowledged an awareness of the

requirement but said that, after waiting for an invitation to confer that never arrived, they resorted to written objections and restated the topics rather than invite the conference required by the rule. The rule, however, does not expressly place the onus on one or the other party to initiate the conference. *See Vail v. Hyundai Motor Am.*, No. 23-CV-297-JDR-SH, 2024 WL 2095549, at *6–7 (N.D. Okla. Mar. 8, 2024) (faulting corporate deponent for failing to act promptly in raising objections to deposition topics).

      The parties' failure to confer as required prevents the rule from working as intended. The advisory committee notes to the 2020 amendment make clear that the obligation to confer is intended to "facilitate[] collaborative efforts" and head off discovery disputes: "Candid exchanges about the purposes of the deposition and the organization's information structure may clarify and focus the matters for examination, and enable the organization to designate and to prepare an appropriate witness or witnesses, thereby avoiding later disagreements." Fed. R. Civ. P. 30(b)(6) advisory committee notes 2020 amendment. These notes recognize that the discussion may be "iterative" and make clear that the parties' obligation is to confer in good faith consistent with Fed. R. Civ. P. 1, not that the parties must reach agreement. *Id.* This conference requirement encourages the "refine[ment]" of the deposition topics, *see Chauvin*, 2023 WL 4175100, at *8, and it is incorporated in the rule to minimize later disagreements requiring court intervention.

The Court could fault both parties for the failure. But, as the party asking the Court to find that a witness was inadequately prepared, Plaintiffs must recognize that they have made their position more difficult by failing to engage in the refining and clarifying discussion contemplated by Rule 30(b)(6). So, even if the Court chooses in this instance not to deny the motion to compel based on the failure to confer, *see Walker LP v. Certain Underwriters at Lloyds, London*, No. CV 22-485-BAJ-RLB, 2023 WL 6134767, at *5 (M.D. La. Sept. 19, 2023), it assesses Ayala's inability to answer certain questions—particularly those that are not squarely within the heart of the topics identified—through a lens that was not focused by the required conference.

The Court turns to Plaintiffs' assertions that Ayala was not reasonably prepared and not reasonably knowledgeable. Having reviewed the transcript of Ayala's deposition as directed by the parties, the Court observed that Ayala was deposed for a full day—the deposition convened at 9:22 that morning and adjourned at 4:15. (*See* D. App. 6, 66.) She provided substantive answers to the questions posed, and none of the instances Plaintiffs point to as proof of Ayala's possible refusal to answer persuade the Court that she was being an obstinate witness rather than a conscientious one. *See Costa v. Cnty. of Burlington*, 254 F.R.D. 187, 190 (D.N.J. 2008) ("Simply because defendant's witness could not answer every question posed to him does not equate to the fact that defendant did not satisfy its obligation to prepare its 30(b)(6) witness."). After considering the transcript and the parties'

arguments, the Court finds that Ayala's deposition did not amount to a non-appearance.

Two aspects of Plaintiffs' arguments bear discussion. First, Plaintiffs fault Ayala for failing to answer questions that are not clearly within the scope of the topics noticed. For example, as noted above, Plaintiffs argue that Ayala was inadequately knowledgeable because she did not know whether AT&T used EDN's information without EDN's permission or whether it had used EDN's information at all. (*See* Mot. at 8.) Plaintiffs contend that these questions fall within the third topic noticed. But it is not clear that AT&T Enterprises' duty to present a knowledgeable witness about the company's profits from FirstNet customers was required to know the specific ways, if any, that AT&T used EDN information or precisely which customers the witnesses should consider as having been "disclosed" by EDN. That is the type of clarification and refinement that could have been facilitated through the required pre-deposition conference.

Second, Plaintiffs argued at the hearing that Ayala was an unsatisfactory witness because she could not provide sufficient answers about Defendants' profits and losses on the FirstNet Contract. Plaintiffs' complaints center on Defendants' failure to provide a GAAP-approved accounting of the contract performance. For example, they focused on Exhibit 28 to Ayala's deposition as an example of financial information that is insufficient, arguing at the hearing that Defendants must have somewhere a reconciliation of the finances to GAAP-approved numbers that are

rolled up into the company's public filings. By their motion, Plaintiffs hope to find a witness who can explain the Defendants' net profits on the FirstNet Contract on a GAAP-approved basis. Defendants, however, point out that none of the topics noticed concern AT&T's public filings or its profits on the FirstNet Contract generally.[2] Rather, the topics Plaintiffs noticed concern AT&T's performance with respect to certain aspects of the contract—i.e., achievement of certain benchmarks or sales to certain customers. Defendants provided the information from its systems as kept in the ordinary course. One would not expect a company such as AT&T to maintain GAAP-compliant profit-and-loss statements as to any particular customer. Based on the topics as Plaintiffs crafted them, the Court cannot find that Ayala was not reasonably prepared and knowledgeable because she could not discuss GAAP-compliant figures concerning the company's performance of the FirstNet Contract.

**B.     The Court declines to reconsider its prior order with respect to portions of the FirstNet Contract.**

Plaintiffs previously requested a copy of the FirstNet Contract through an earlier motion to compel. (*See* Dkt. No. 116.) The Court denied that request, in part due to the sensitivity of certain technical information contained in the contract and Plaintiffs' ability to obtain information about the relevant financial aspects of the contract through other means. (*See* Dkt. No. 125 at 3-4.) Plaintiffs ask again, this

---

[2] Defendant notes that, subsequent to the first Rule 30(b)(6) deposition, Plaintiffs noticed a second Rule 30(b)(6) deposition including AT&T's SEC filings as a topic but later withdrew the notice, evidencing their understanding that the public filings were not part of the first deposition.

time for "relevant portions" of the contract. (Mot. at 14-16.) They assert that the disclosure of contract provisions "defining connection thresholds, performance requirements, and the metrics tied to AT&T's compensation." (Mot. at 15.) Plaintiffs specifically disclaim any request for sensitive infrastructure details or technical specifications. (*Id.* at 16.) At the hearing, they asserted that the portions of the contract requested concern "Task Four," the portion of the contract that relates to the build-out of the system and financial considerations.

The Court declines Plaintiffs' request to reconsider its prior order. Consistent with the Court's prior order, Defendants have provided discovery concerning the milestones set by the contract and AT&T's remuneration for achieving those milestones and financial information concerning revenues and expenses. (*See, e.g.*, P. App. 96-102.)

## III. CONCLUSION

Plaintiffs' Expedited Motion to Compel is **DENIED**, and the parties shall bear their respective costs.

**SO ORDERED** on February 17, 2026.

BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE