UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| EDN GLOBAL, INC. AND JEROME EDMONDSON, | § § § | |
| *Plaintiffs,* | § § § | |
| v. | § § § | Civil Action No. 3:23-CV-0355-X |
| AT&T MOBILITY SERVICES, LLC et al., | § § § | |
| *Defendants.* | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiffs EDN Global, Inc. d/b/a EDN Communication (EDN Communication) and Jermone Edmondson's (Mr. Edmondson) (collectively "EDN") motion for partial summary judgment and Defendants AT&T Mobility Services LLC; AT&T Enterprises, LLC; and AT&T Inc.'s (collectively "AT&T") motion for summary judgment. (Docs. 194, 197). After careful consideration, because an enforceable contractual limitation period bars EDN's claims, the Court **GRANTS** AT&T's motion for summary judgment and **DENIES AS MOOT** EDN's motion for partial summary judgment.

### I. Factual Background

The Court has addressed the factual background of this case in prior orders and therefore recounts only the facts relevant to these motions.[1]

---

[1] *See* Docs. 10, 33, 63, 81, 106, 148.

In 2012, Congress created the FirstNet Authority within the United States Department of Commerce to oversee the creation and delivery of a nationwide public safety broadband network. The FirstNet Authority awarded AT&T a contract to build out the infrastructure and sell its services to first responders. AT&T hired "Solutions Providers" to help sell its services to public sector agencies. AT&T and EDN entered the 2018 Alliance Agreement (Agreement) effective January 22, 2018, and FirstNet Addendum (Addendum) effective July 12, 2018 (collectively the "FirstNet Agreements"), in which EDN agreed to be a Solutions Provider. The Agreement included a limitation of liability clause that stated: "No action or proceeding against either party may be commenced more than two years after the cause of action accrues."[2] The clause applied "regardless of the form of action, whether in contract, tort, strict liability or otherwise."[3]

## II. Legal Standard

Courts may grant summary judgment if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] A material fact is one "that might affect the outcome of the suit under the governing law."[5] And a "dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[6] Courts "resolve

---

[2] Doc. 195-1 at Appx. 830 (emphasis omitted).

[3] *Id.* at Appx. 831 (emphasis omitted).

[4] Fed. R. Civ. P. 56(a).

[5] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

[6] *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (cleaned up).

factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[7]

The movant bears the initial burden of identifying the evidence "which it believes demonstrate[s] the absence of a genuine [dispute] of material fact."[8]  Then "the non-movant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial."[9]  It is the nonmovant's burden to "present affirmative evidence in order to defeat a properly supported motion for summary judgment."[10]  This requires the nonmoving party to "go beyond the pleadings and establish specific facts showing that there is a genuine dispute."[11]

"[A] court need only consider the materials cited by the parties."[12]  "[I]t is not the trial court's obligation to sift through the record in search of evidence to support a party's claims; instead, it is the party's burden to identify specific evidence in the

---

[7] *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (cleaned up).

[8] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* Fed. R. Civ. P. 56(c)(1).

[9] *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000) (citing *Anderson*, 477 U.S. at 248–49).

[10] *Anderson*, 477 U.S. at 257.

[11] *McWhirter v. AAA Life Ins. Co.*, 622 F. App'x 364, 365 (5th Cir. 2015) (quoting *Celotex*, 477 U.S. at 324) (cleaned up).

[12] *Diamond Servs. Corp. v. RLB Contracting, Inc.*, 113 F.4th 430, 443 (5th Cir. 2024) (citing Fed. R. Civ. P. 56(c)(3)).

3

record, and to articulate the precise manner in which that evidence supported its claim."[13]

### III. Analysis

AT&T contends it is entitled to summary judgment because EDN's claims fail as a matter of law, or in the alternative, lack supporting evidence. EDN, by contrast, argues it is entitled to summary judgment on certain claims because the record conclusively establishes each element and presents no genuine dispute of material fact. Because the contractual limitations period bars all of EDN's claims and is dispositive of the case, the Court addresses only the arguments relevant to that issue.

### A.    AT&T's summary judgment evidence.

As an initial matter, the Court addresses EDN's extensive objections to AT&T's exhibits in support of its motion for summary judgment. EDN's objections can be categorized into five separate grievances: (1) AT&T's counsel fails to establish the necessary foundation in its declaration, (2) the documents attached to counsel's declaration contain hearsay, (3) certain declarations are not based on personal knowledge, (4) submission of the full deposition transcripts was improper, and (5) filings from a separate case are improper.[14]

"At the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form[;]" instead, "materials cited to support or

---

[13] *Id.* at 443–44 (cleaned up).

[14] Doc. 218-1 at 4–13.

dispute a fact need only be capable of being presented in a form that would be admissible in evidence."[15]

First, the Court addresses AT&T's submission of the entire deposition transcripts when only select portions were referenced throughout its briefing. AT&T clarifies it only attached the full transcripts "to provide context for the portions cited."[16] EDN does not object to any of the cited portions of the deposition transcripts.[17] Even though AT&T submitted the full deposition transcripts as a courtesy to the Court, the full transcripts "unnecessarily burden[] the record and consume[] scarce judicial resources,"[18] and the Court relies only on the portions of the deposition transcripts cited by the parties in determining this motion.

The Court has reviewed EDN's remaining objections to AT&T's summary judgment evidence and determines that disputed evidence is not central to the Court's conclusions regarding the validity and enforceability of the Agreement, so even if the Court sustained the objections, the result would not change.[19]

---

[15] *Maurer v. Indep. Town*, 870 F.3d 380, 384 (5th Cir. 2017) (cleaned up) (citing Fed. R. Civ. P. 56(c)).

[16] Doc. 229-1 at 25.

[17] Doc. 218-1 at 12–13.

[18] *Jones v. United Parcel Serv., Inc.*, No. 3:06-CV-1535-L, 2008 WL 2627675, at *6 (N.D. Tex. June 30, 2008) (Lindsay, J.), *aff'd*, 307 F. App'x 864 (5th Cir. 2009).

[19] *Express Working Cap., LLC v. Starving Students, Inc.*, 28 F. Supp. 3d 660, 662 n.1 (N.D. Tex. 2014) (O'Connor, J.); *Jones*, 2008 WL 2627675, at *6.

In any event, none of EDN's evidentiary objections hold weight because EDN has not shown that AT&T's evidence is incapable of being presented in admissible form.[20]

EDN first objects to AT&T counsel's declaration because it allegedly states that the attached documents are "true and correct copies" without establishing personal knowledge of the documents' creation.[21]  But EDN identifies no inaccuracies in the documents themselves.  Because EDN "does not object on the grounds that [the documents attached to the declaration are] authentic, only on that it has not been authenticated" this objection fails.[22]

EDN next objects that certain documents attached to counsel's declaration and bearing AT&T bates stamps constitute hearsay.[23]  The Court finds this objection unpersuasive as EDN similarly relies on documents bearing an AT&T bates stamp to support their own motion for partial summary judgment and response to AT&T's motion for summary judgment.[24]  Moreover, EDN does not identify which documents allegedly constitute hearsay.  AT&T asserts that most of the challenged documents are not offered for the truth of the matter asserted and that any remaining documents fall within recognized hearsay exceptions.  Accordingly, this objection also fails.[25]

---

[20] *Maurer*, 870 F.3d at 384.

[21] Doc. 218-1 at 12; Doc. 195-1 at Appx. 1–12.

[22] *Hernandez v. Allstate Vehicle & Prop. Ins. Co.*, No. 1:24-CV-00086, 2025 WL 1485872, at *5 (S.D. Tex. Apr. 22, 2025).

[23] Doc. 218-1 at 6–7.

[24] Doc. 219-1 at 1; Doc. 199-1 at 1–2.

[25] *Hernandez*, 2025 WL 1485872, at *5.

EDN further objects to certain declarations are improper because they state they are based on "personal knowledge, and information and belief."[26]   Although summary judgment declarations must be based on personal knowledge, that "requirement is satisfied when the court can reasonably infer personal knowledge from the [declaration] itself."[27]   Here, the Court can reasonably infer personal knowledge from the declarations' language and from the declarants' employment relationships with AT&T, so the objection fails as well.[28]

Lastly, EDN objects to AT&T's use of filings from a separate case, but EDN cites no authority supporting this objection and does not explain why those materials could not be presented in admissible form at trial, so its final objection fails.

Having addressed EDN's objections, the Court turns to the merits of AT&T's summary judgment motion.

### B.     AT&T and EDN have an enforceable agreement.

The Court concludes, as a matter of law, that the Agreement between AT&T and EDN is valid and enforceable.  To the extent EDN contends the Agreement or any portion of it is unenforceable because it was procured by fraud, the summary judgment record establishes that EDN ratified the Agreement and waived any right to rescind or declare the Agreement void.

---

[26] Doc. 218-1 at 7; Doc. 195-1 at Appx. 496, 497, 500, 503, 506.

[27] *Campbell Harrison & Dagley, L.L.P. v. PBL Multi-Strategy Fund, L.P.*, 744 F. App'x 192, 198 (5th Cir. 2018).

[28] Doc. 195-1 at Appx. 496, 497, 500, 503, 506.

"A contract procured by fraud is voidable."[29]  But, "[i]f a party who has been induced by fraud to enter into an agreement engages in conduct that recognizes the agreement as binding after the party becomes aware of the fraud, the party ratifies the agreement and waives any right to assert fraud as a ground to avoid the agreement."[30]  "Once a party ratifies an agreement, that party may not later withdraw the ratification and seek to avoid the agreement."[31]

Likewise, "[a]ny act inconsistent with an intention to avoid the agreement has the effect of waiving the right of rescission."[32]  "Rescission is an equitable remedy that operates to extinguish a contract that is legally valid but must be set aside due to fraud, mistake, or for some other reason to avoid unjust enrichment."[33]  "It should be noted, however, that [t]he right to rescind a contract may be lost by inaction and conduct showing an affirmation of the contract after a knowledge of the facts which are grounds for rescission."[34]

EDN affirmatively acknowledges that "[t]here is no dispute regarding the existence of valid contracts between EDN and AT&T."[35]  Even assuming, *arguendo*,

---

[29] *PSB, Inc. v. LIT Indus. Tex. Ltd. P'ship*, 216 S.W.3d 429, 433 (Tex. App.—Dallas 2006, no pet.).

[30] *Cordero v. Tenet Healthcare Corp.*, 226 S.W.3d 747, 750 (Tex. App.—Dallas 2007, pet. denied) (citing *Rosenbaum v. Tex. Bldg. & Mort. Co.*, 167 S.W.2d 506, 508 (Tex. 1943)).

[31] *Id.*

[32] *Id.*

[33] *Kennard v. Indianapolis Life Ins. Co.*, 420 F. Supp. 2d 601, 611 (N.D. Tex. 2006) (Fish, C.J.) (quoting *Martin v. Cadle Co.*, 133 S.W.3d 897, 903 (Tex. App.—Dallas 2004, pet. denied)).

[34] *Id.* (citing *Barker v. Roelke*, 105 S.W.3d 75, 84 (Tex. App.—Eastland 2003, pet. denied)).

[35] Doc. 198-1 at 24.

that EDN could establish the Agreement was procured through fraud, EDN's subsequent conduct conclusively establishes ratification.[36]  Although EDN pled breach of contract in the alternative,[37] EDN later moved for summary judgment seeking to enforce the Agreement and recover for AT&T's alleged breach.[38]  In doing so, EDN relied on the Agreement as valid, invoked its provisions offensively, and requested affirmative relief premised on the Agreement's enforceability.

That conduct is inconsistent with an intent to rescind or avoid the Agreement. A party may plead inconsistent theories at the outset of litigation, but once it elects to treat the contract as binding after learning of the alleged fraud, Texas law recognizes that conduct as ratification.[39]  EDN cannot simultaneously seek to enforce the Agreement when advantageous while disavowing provisions it finds unfavorable. Accordingly, EDN ratified the Agreement and waived any right to rescind or avoid it. The Agreement is therefore enforceable as a matter of law.

C.    **The specific contractual limitations period is also enforceable.**

EDN alleges five reasons why the contractual limitation period is inapplicable and unenforceable: (1) the limitation provision was not conspicuous, (2) the provision lacks the required specificity, (3) the provision violates the Texas Civil Practice and

---

[36] *See, e.g.*, *Cordero*, 226 S.W.3d at 750 (citing *Rosenbaum*, 167 S.W.2d at 508).

[37] Doc. 99 at 44.

[38] Doc. 198-1 at 22–29.

[39] *Budge v. Post*, 544 F. Supp. 370, 384 (N.D. Tex. 1982) (Hill, J.) ("[O]ne cannot enforce an advantage existing only by virtue of a contract, and at the same time repudiate the contract as one not binding upon him, thereby avoiding some of its provisions." (cleaned up)).

Remedy Code Section 16.070, (4) the provision is ambiguous, and (5) AT&T waived its right to enforce the provision.[40]  Each of EDN's arguments fails.

### *Conspicuousness*

EDN first argues that the Agreement's contractual limitations period is unenforceable under Texas's fair-notice doctrine.[41]  But, Texas courts have expressly limited the fair-notice requirement of conspicuousness to releases and indemnity clauses.[42]  Limitation-of-liability provisions, by contrast, are not subject to the conspicuousness requirement.[43]  The cases EDN cites are inapposite because each involved indemnity provisions—not contractual limitations periods.

Even if the fair-notice requirement was applicable to the Agreement, the Court would find the language is conspicuous.  The Agreement's contractual limitations clause appears in all capital letters and is set apart in its own separately labeled subsection.[44]

Accordingly, EDN's first argument fails as a matter of law.

### *Specificity*

EDN next argues that the contractual limitations period lacks the specificity required to shorten the statutory limitations period.  But the specificity requirement

---

[40] Doc. 218-1 at 21–34.

[41] *Id.* at 22.

[42] *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 387 (Tex. 1997).

[43] *Tippmann Const., Inc. ex rel. Selective Ins. Co. of S.C. v. Prof'l. Serv. Indus., Inc.*, No. 4:11-CV-591-Y, 2013 WL 169267, at *5 (N.D. Tex. Jan. 16, 2013) (Means, J.) (citing *Bergholtz v. Sw. Bell Yellow Pages, Inc.*, 324 S.W.3d 195, 199 (Tex. App.—El Paso 2010, no pet.)).

[44] Doc. 195-1 at Appx. 830.

applies only when "a party [is] seeking indemnity from the consequences of that party's own negligence,"[45] not to contractual limitations periods.  That is why another district court upheld a provision barring "either party from bringing causes of action that relate to the [Agreement], whether arising under theory of contract, tort (including negligence), strict liability or otherwise, more than two years after that cause of action accrues" as valid and enforceable.[46]

Here, the Agreement provides that "no action or proceeding against either party may be commenced more than two years after the cause of action accrues,"[47] and that this limitation applies "regardless of the form of action, whether in contract, tort, strict liability or otherwise."[48]  "Party" expressly includes both AT&T and the applicable Solution Provider—EDN Global, Inc. d/b/a EDN Communications—as well as "their directors, officers, employees, and representatives."[49]

Accordingly, even if the specificity requirement applied here—which it does not—the provision would satisfy that standard.  The contractual limitations period therefore applies to both EDN Communications and Jerome Edmonson because Edmonson is EDN's President and CEO.[50]  And because the provision applies

---

[45] *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993).

[46] *Gimme The Best, L.L.C. v. Sungard Vericenter, Inc.*, No. 08-CV-2873, 2010 WL 1388993, at *2 (S.D. Tex. Apr. 1, 2010) (cleaned up).

[47] Doc. 195-1 at Appx. 830 (emphasis omitted).

[48] *Id.* at Appx. 831 (emphasis omitted).

[49] *Id.* at Appx. 817–18.

[50] *Id.* at Appx. 818.

"regardless of the form of action," it bars claims arising from the Agreement whether pled in contract or tort.[51]  So, EDN's second argument also fails as a matter of law.

### *Texas Civil Practices and Remedies Code*

EDN next argues that the contractual limitations provision violates Section 16.070 of the Texas Civil Practice and Remedies Code because it purportedly shortens the limitations period for its breach of contract claim below the statutory minimum. Under Texas law, "the statute of limitations for a breach of contract action is four years from the day the cause of action accrues [but] parties may contract for a different period of time in which a party may file a breach of contract action."[52]  The statute prohibits parties from entering an agreement that "purports to limit the time in which to bring suit on the stipulation, contract, or agreement to a period *shorter* than two years."[53]  Another federal district court held that a provision barring suits brought "*more* than two years after the cause of action accrues" was valid and enforceable under Section 16.070.[54]  Likewise, a Texas appellate court upheld a provision barring actions brought "more than two years after" the date the payment was due.[55]

---

[51] *Id.* at Appx. 831 (emphasis omitted).

[52] *Christian Care Ctr. v. Am. Alternative Ins. Corp.*, No. 4:25-CV-00321-O, 2025 WL 2831472, at *2 (N.D. Tex. Oct. 6, 2025) (O'Connor, C.J.) (cleaned up).

[53] Tex. Civ. Prac. & Rem. Code § 16.070(a) (emphasis added).

[54] *Gimme the Best, L.L.C.*, 2010 WL 1388993, at *2 (citing Tex. Civ. Prac. & Rem. Code § 16.070(a)).

[55] *Hewlett-Packard Co. v. Benchmark Elecs., Inc.*, 142 S.W.3d 554, 565 (Tex. App.—Houston [14th Dist.] 2004, pet. denied).

Here, the Agreement provides that "no action . . . may be commenced more than two years after the cause of action accrues."[56]  By its plain language, the Agreement establishes a two-year limitations period from the date of accrual, which is not "a period shorter than two years."[57]  Consistent with the authorities above, this Court finds that "more than two years"[58] does not constitute "a period shorter than two years"[59] under Section 16.070.

Accordingly, the contractual limitations provision does not violate the Texas Civil Practice and Remedies Code, and EDN's third argument fails as a matter of law.

*Ambiguity*

EDN next asks the Court to find the contractual limitations provision ambiguous when read in the context of the Agreement as a whole and therefore unenforceable as a matter of law.

First, EDN points to other provisions in the Agreement and contends that the limitations provision and those provisions "create conflicting terms regarding timing and preservation of claims."[60]  But the cited provisions do not conflict—rather, they

---

[56] Doc. 195-1 at Appx. 830 (emphasis omitted).

[57] Tex. Civ. Prac. & Rem. Code § 16.070(a).

[58] Doc. 195-1 at Appx. 830 (emphasis omitted).

[59] Tex. Civ. Prac. & Rem. Code § 16.070(a).

[60] Doc. 218-1 at 31.

address different subjects and merely clarify the parties' rights and obligations during the applicable limitations period.[61]

Second, EDN argues that the provision is ambiguous because the term "accrue" is undefined.[62]  But "accrue" has an established meaning under Texas law,[63] and contractual language is not ambiguous merely because a term is left undefined.[64]

Accordingly, the contractual limitations provision is not ambiguous, and EDN's fourth argument fails as a matter of law.

### *Waiver*

Lastly, EDN argues that AT&T waived its right to enforce the contractual limitations provision by asserting counterclaims in this action.

Under Texas law, waiver is the "intentional relinquishment of a known right or intentional conduct inconsistent with claiming it."[65]  AT&T's assertion of counterclaims does not satisfy that standard.  In federal court, attorney's fees are typically addressed after the merits of the case are resolved,[66] which is why AT&T

---

[61] Doc. 195-1 at Appx. 831, Appx. 833.  Section 15.6 preserves the parties' rights to bring actions within the two-year period post-termination while Section 17.7 clarifies that the breach of a surviving obligation accrues from the time of the breach, not the time of the termination of the Agreement.

[62] Doc. 218-1 at 30.

[63] *See, e.g., Parsley Mins., LLC v. Flat Creek Res., LLC*, No. 3-21-00337-CV, 2023 WL 2052315, at *4 (Tex. App.—Austin Feb. 17, 2023, no pet.) ("[T]he term accrue means to come into existence as a legally enforceable claim." (cleaned up)).

[64] *Hartman Income REIT Mgmt. v. Summer Energy, LLC*, 693 S.W.3d 622, 630 (Tex. App.—Houston [14th Dist.] 2023, no pet.) (cleaned up).  By analogy, the constitution does not define "habeas corpus."  This doesn't mean there's no right to habeas corpus.  We just look elsewhere for the meaning of the term.

[65] *U.S. Fid. & Guar. Co. v. Bimco Iron & Metal Corp.,* 464 S.W.2d 353, 357 (Tex. 1971).

[66] Fed. R. Civ. P. 54(d)(2).

later dismissed its counterclaim.[67]  That conduct is not inconsistent with enforcing the contractual limitations provision and does not constitute waiver.

Accordingly, EDN's final argument for why the contractual limitations provision is unenforceable fails as a matter of law.

### D.     There is no genuine dispute of material fact as to the tolling of the accrual date of any of EDN's claims.

Having concluded, as a matter of law, that the Agreement's contractual limitations provision is valid and enforceable, the Court next considers whether the summary judgment record creates a genuine dispute of material fact that EDN's claims accrued within the contractual limitations period or that any tolling or deferred accrual doctrine preserves those claims.  The Court finds that it does not.

Under Texas law, "a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred."[68]  Although the discovery rule may defer accrual "until the plaintiff knew, or exercising reasonable diligence, should have known of the facts giving rise to the cause of action,"[69] this rule only applies to "exceptional cases."[70]  Likewise, fraudulent concealment may toll limitations, but

---

[67] *Romero v. U.S. Bank Tr. Nat'l Ass'n*, No. 3:24-CV-1175-S-BW, 2025 WL 317565, at *9 (N.D. Tex. Jan. 28, 2025) (McKay, M.J.) (Fees are "only relevant after a determination of liability."); Doc. 229-1 at 24–25.

[68] *TIG Ins. Co. v. Aon Re, Inc.,* 521 F.3d 351, 355 (5th Cir. 2008) (cleaned up).

[69] *Marcus & Millichap Real. Est. Inv. Servs. of Nev., Inc. v. Triex Tex. Holdings, LLC,* 659 S.W.3d 456, 462 (Tex. 2023) (cleaned up).

[70] *Via Net. v. TIG Ins. Co.,* 211 S.W.3d 310, 313–14 (Tex. 2006) (cleaned up).

15

only "until the fraud is discovered or could have been discovered with reasonable diligence."[71]

This action was filed on June 16, 2022.[72] Accordingly, any claim accruing before June 16, 2020, is barred unless preserved by some tolling doctrine or exception.

AT&T identified summary judgment evidence establishing that EDN's claims accrued outside the enforceable two-year contractual limitations period.[73] And EDN failed to rebut it by identifying any competent summary judgment evidence to create a genuine dispute as to accrual, deferred accrual, or tolling of its claims. Instead, EDN devoted substantial argument within its response to challenging the enforceability of the contractual limitations provision itself.[74] Although EDN briefly asserts that the contractual limitations period "does not affect the tolling of the accrual date"[75] and references that it "pled the discovery rule,"[76] bare assertions in briefing and pleadings are insufficient to defeat summary judgment absent supporting evidence.[77] EDN did not raise for the Court any argument or evidence to create a genuine dispute of material fact as to the tolling or accrual of its claims to

---

[71] *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 927 (Tex. 2011) (cleaned up).

[72] Doc. 1.

[73] Doc. 194-3 at 34; Doc. 195-1 at Appx. 391.

[74] Doc. 218 at 21–34.

[75] *Id.* at 22.

[76] *Id.* at 28 n.84.

[77] *McWhirter*, 622 F. App'x at 365; *Diamond Servs. Corp.*, 113 F.4th at 433.

bring the claims within the contractual limitations period, and the Court is not under a duty to "comb the record in search of summary judgment evidence."[78]

EDN failed to carry its burden to show a genuine dispute of material fact regarding deferred accrual or tolling, and the summary judgment record establishes that EDN knew of the alleged conduct giving rise to its claims before June 16, 2020.[79] So, even viewing the evidence in the light most favorable to EDN, no reasonable fact finder could conclude that EDN's claims accrued within the contractual limitations period or that the discovery rule, fraudulent concealment, or any other tolling doctrine preserves its claims.

**E.    The contractual limitations period applies to all of EDN's claims.**

The Court now turns to the scope of the contractual limitations period.  EDN has six live claims against AT&T: (1) misappropriation of trade secrets under Defend Trade Secrets Act, (2) misappropriation of trade secrets under Texas Uniform Trade Secrets Act, (3) fraud and fraudulent inducement, (4) conspiracy to commit fraud, (5) promissory estoppel, and (6) breach of contract.  EDN asserts that the contractual limitations period cannot apply to any of its claims outside of its breach of contract claim.[80]  But this ignores the Agreement's language.[81]

---

[78] *Normore v. Dallas Indep. Sch. Dist.*, 677 F. Supp. 3d 494, 543 (N.D. Tex. 2023) (Brown, J.) (citing *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 463 (5th Cir. 1996)).

[79] Doc. 218-1 at 28 n.84 ("Plaintiffs are still well within the statute of limitations even applying the shortest limitation period of 3 years. The effective date of termination for the [Agreement] is July 6, 2019."); Doc. 195-1 at Appx. 391.

[80] Doc. 218-1 at 29.

[81] *Contrast id.* at 28–29 *with* Doc. 195-1 at Appx. 831.

17

The Agreement expressly states the two-year contractual limitation period applies "regardless of the form of action, whether in contract, tort, strict liability or otherwise."[82]  Indeed, another federal court found that a nearly identical contractual limitation period applied to any of the plaintiff's claims related to the underlying agreement, not just the breach of contract claim.[83]  Here, not only does the Agreement expressly cover claims "regardless of the form of action"[84] but all of EDN's remaining claims are inextricably related to and woven from the parties' contractual relationship, so those claims are barred by the enforceable two-year contractual limitations period.[85]  Summary judgment in favor of AT&T is therefore appropriate on all remaining claims asserted by EDN.

### F.    EDN's partial motion for summary judgment is moot.

In light of the Court granting AT&T's motion for summary judgment and dismissing all claims as a matter of law, EDN's partial motion for summary judgment is **DENIED AS MOOT**.

---

[82] Doc. 195-1 at Appx. 831 (emphasis omitted).

[83] *Gimme The Best, L.L.C.*, 2010 WL 1388993, at *2.

[84] Doc. 195-1 at Appx. 831 (emphasis omitted).

[85] EDN's trade secrets claims rely on the confidential relationship between the parties and the Agreement's definitions of both "Confidential Information" and "Opportunity."  Doc. 218-1 at 14–21. Furthermore, EDN's fraud claims rely on the Agreement's definitions of "Confidential Information" and "Opportunity" as the basis of its claims.  Doc. 198-1 at 9–11.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** AT&T's motion for summary judgment **DISMISSING** all of EDN's claims against AT&T and **DENIES AS MOOT** EDN's motion for partial summary judgment.

**IT IS SO ORDERED** this 23rd day of June, 2026.

_____

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE